NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210217-U

NO. 4-21-0217

IN THE APPELLATE COURT

FILED
February 24, 2022
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| KIMBERLY ESKINS, | ) | No. 20CM162 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Carla Elise Barnes, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The State introduced sufficient evidence for a rational trier of fact to find
defendant guilty of unlawfully violating an order of protection.

¶ 2     On March 8, 2021, defendant Kimberly Eskins was found guilty of unlawful
violation of an order of protection. Defendant appeals, arguing the State failed to prove her
guilty beyond a reasonable doubt. We affirm.

¶ 3                    I. BACKGROUND

¶ 4     On February 4, 2020, Demi Bayler obtained an emergency order of protection
against defendant in McLean County case No. 20-OP-59. On February 19, 2020, the circuit
court entered a plenary order of protection. The order of protection required defendant stay 500
feet away from Bayler.

¶ 5     On September 8, 2020, the State charged defendant with unlawful violation of an

order of protection (720 ILCS 5/12-3.4(a)(1)(i) (West 2020)), alleging defendant violated the order of protection by having contact with Bayler. On December 7, 2020, the charge was amended to allege defendant violated the order of protection by being within 500 feet of Bayler. The same day, defendant waived her right to a jury trial.

¶ 6        Defendant's bench trial was held on March 8, 2021. Bayler testified she and defendant are cousins. She attended a child's birthday party on June 13, 2020, at defendant's parents' home. The party was outside. She arrived around 1 p.m. and left between 3:45 and 4 p.m. Her plan was to be at the party when defendant was working and not home. However, while at the party, she saw defendant and defendant's boyfriend, Kenny Richmond, drive by the party. Defendant and Bayler made eye contact, and defendant was laughing. Richmond and defendant drove to defendant's house, which was across an alley from defendant's parents' home. The backyards of the two homes faced each other. Defendant's parents had a garage at the back of their property.

¶ 7        Defendant went inside her home but then came back outside and walked over to her parents' property near the garage. Bayler was still at the party in the yard, which was to the side of the garage. Defendant came within 20 to 30 feet of Bayler. Defendant and Bayler made eye contact again. After defendant looked at Bayler, defendant continued to talk to defendant's father. After a few minutes, defendant went back to her house.

¶ 8        At that point, Bayler started getting ready to leave and then left the party. Bayler stated her mom's boyfriend was in the general vicinity of Bayler and defendant. Bayler did not report the incident to the police until early July because she wanted to first talk to the attorney who had been with her when she received the order of protection.

¶ 9        Curtis Rients testified he was at the birthday party. Defendant was his girlfriend's

niece, and Bayler was his girlfriend's daughter. Rients saw defendant exit her house and walk over to her parents' garage. Defendant talked to her dad for less than a couple of minutes, then went back to her house, and slammed the door. Defendant did not come into the garage. Defendant spoke with her father just outside the garage and was in the same yard where the party was taking place. Bayler was standing next to Curtis while defendant was speaking with her father. Defendant was within 40 feet of Bayler. Rients did not recall anything being said between the two women. After the child opened the three gifts Rients, his girlfriend, and Bayler brought, they left.

¶ 10 Sue Bryant testified she had known defendant for over 20 years. Bryant was at the party but did not see defendant and Bayler there at the same time. When Bayler left the party, defendant was not on the property. After Bayler left, Bryant texted defendant to let her know Bayler had left and defendant could come to the party. Defendant arrived about 10 minutes later. Bryant believed Bayler left the party about 3:20 p.m. She texted defendant about 3:30 p.m.

¶ 11 Billie Kimmell testified she is defendant's sister. The birthday party was for Kimmell's son. Bayler arrived at the party around 1:15 or 1:30 p.m. and left a little after 3 p.m. According to Kimmell, the party was planned to last from 2 p.m. to 5 p.m. Because defendant and Bayler could not be around each other, the plan was for the two women to attend the party at different times. Bayler would attend the party early, and defendant would attend after she got off work. Bayler asked if she, her mom, and her mom's boyfriend could stay and watch Kimmell's son open the presents they brought for him after defendant arrived home from work. Kimmell said yes. After Bayler left, Kimmell texted defendant to tell her she could come to the party. Kimmell testified defendant and Bayler were not at the party at the same time.

¶ 12    James Eskins, defendant's father, testified the birthday party was at his house. He testified Bayler and defendant were not at the party at the same time. He denied he and defendant had a conversation while Bayler was at the party. Around 3 p.m., Eskins told Kimmell to tell Bayler she needed to leave so defendant could come to the party when she got home from work. When Eskins saw Bayler, her mother, and her mother's boyfriend drive away from the party, defendant was still at her house.

¶ 13    Kenny Richmond testified he and defendant got off work sometime after 3 p.m. He drove defendant to her home. Richmond and defendant could see the party and knew Bayler was present. He and defendant did not go to the party until Bayler left. Richmond denied defendant went to the party and returned home while Bayler was still there.

¶ 14    Defendant chose not to testify.

¶ 15    The trial court found defendant guilty of one count of unlawful violation of an order of protection. On March 26, 2021, the trial court sentenced defendant to 24 months of supervision and ordered defendant to perform 100 hours of community service.

¶ 16    This appeal followed.

¶ 17                                II. ANALYSIS

¶ 18    Defendant argues the State failed to prove her guilty beyond a reasonable doubt of unlawfully violating the order of protection. According to defendant, she did not intentionally violate the order. When a defendant challenges her conviction based on the sufficiency of the evidence, we will not disturb the trier of fact's decision if any rational trier of fact could have found the State proved the essential elements of the offense beyond a reasonable doubt when the evidence is viewed in a light most favorable to the prosecution. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276-77 (1985). It is not the function of an appellate court to retry a

defendant. *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277. Credibility determinations are within the province of the trier of fact. *Collins*, 106 Ill. 2d at 261-62, 478 N.E.2d at 277.

¶ 19 Citing *People v. Mandic*, 325 Ill. App. 3d 544, 759 N.E.2d 138 (2001), and *People v. Reher*, 361 Ill. App. 3d 697, 838 N.E.2d 206 (2005), defendant contends unintentional, accidental, or aimless conduct does not constitute the violation of a stay-away order. Defendant notes the alleged offense occurred at a party she was invited to attend. In *Mandic*, the Second District stated:

> "Whether a defendant who is otherwise lawfully present in a public place comes within sufficient proximity of a protected person who is also present there to constitute a violation of a stay-away order will depend on a variety of factors. [Citation.] A court should consider factors including, but not limited to, the size of the public area, the total number of people present, the defendant's purpose for being present, the length of time, and when the defendant knew or should have known that a protected party would be present." *Mandic*, 325 Ill. App. 3d at 549, 759 N.E.2d at 143.

In *Mandic*, the defendant stipulated the order of protection was valid and required him to stay away from his ex-wife and their children. *Mandic*, 325 Ill. App. 3d at 547, 759 N.E.2d at 141.

¶ 20 The evidence showed the defendant in *Mandic* acted intentionally when he voluntarily entered a church after being told his ex-wife and their children were expected to attend services that morning, he remained in the church after he saw his children were present, he entered the social hall of the church and remained there even after his ex-wife's attorney told the defendant he considered the defendant's conduct to be violating the order of protection, and he hugged and kissed his children after they were released from Sunday school and entered the

- 5 -

social hall. *Mandic*, 325 Ill. App. 3d at 550, 759 N.E.2d at 143-44. The Second District found the defendant's intentional and affirmative acts created the conditions that allowed the children to approach him and the trial court could rationally conclude the defendant intentionally violated the order of protection. *Mandic*, 325 Ill. App. 3d at 550, 759 N.E.2d at 144.

¶ 21    Although defendant's conduct in this case did not rise to the level in *Mandic*, the trial court here could have rationally found defendant guilty of unlawfully violating the order of protection when the evidence is viewed in a light most favorable to the prosecution. The trial court found Bayler's testimony credible and Reints's testimony highly credible. Bayler testified defendant looked at her from a car while driving by the party. Defendant then walked over to her parents' lot where the party was being held and looked at Bayler while talking to her father. Defendant then continued to talk to her father even though she was less than 40 feet from Bayler. A rational trier of fact could have easily determined defendant intentionally violated the order of protection.

¶ 22    This case is easily distinguishable from the situation in *Reher* where the Second District reversed the defendant's conviction for violating an order of protection. *Reher*, 361 Ill. App. 3d at 698, 838 N.E.2d at 207. In *Reher*, the Second District found the State failed to prove beyond a reasonable doubt the contact between the defendant and the person protected by the order of protection was intentional. *Reher*, 361 Ill. App. 3d at 701, 838 N.E.2d at 210. However, the contact in *Reher* occurred in front of a Kmart located on a busy intersection. *Reher*, 361 Ill. App. 3d at 702, 838 N.E.2d at 210.

¶ 23    According to the Second District, the trial court determined the defendant's contact with the protected person was intentional because defendant knew where the protected person lived and decided to shop at a Kmart near the protected person's residence although the

defendant had other shopping alternatives available. *Reher*, 361 Ill. App. 3d at 702, 838 N.E.2d at 210. The Second District acknowledged the defendant chose to shop at the Kmart rather than a different store and traveled closer to the protected person's home than perhaps he had to. *Reher*, 361 Ill. App. 3d at 702, 838 N.E.2d at 210-11. However, the Second District noted the State did not present any evidence defendant knew or should have known the protected person would be at the Kmart during the brief period of time he was present. *Reher*, 361 Ill. App. 3d at 702, 838 N.E.2d at 211.

¶ 24       In this case, unlike in *Reher*, the State presented evidence defendant knew Bayler was at the party and still came to the party while Bayler was present. Even after seeing Bayler at the party only a short distance away, defendant did not immediately leave but remained at the party talking to her father for a brief period of time.

¶ 25                                    III. CONCLUSION

¶ 26       For the reasons stated, we affirm the trial court's judgment.

¶ 27       Affirmed.